IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CARA L. KRACH, Executor of the Estate of Gary R. Krach, deceased, ) ) ) | CASE NO. 1:08 CV 2082 |
| Plaintiff, ) ) | MAGISTRATE JUDGE WILLIAM H. BAUGHMAN, JR. |
| v. ) ) | |
| LAKESIDE TRANSPORTATION CO., INC., *et al.*, ) ) ) | |
| Defendants. ) ) | **MEMORANDUM OPINION AND ORDER** |

## Introduction

Before me[1] is a motion by plaintiff Cara Krach to alter or amend my prior order denying her prior motion for specific performance of the settlement agreement in this case,[2] together with a motion by defendants Lakeside Transportation Co., Inc.; John Henry Walker; and Frank Evans (Lakeside) to specifically enforce the settlement agreement, as well as to award attorneys fees.[3]  Each side has responded in opposition to the other's motion,[4] and Lakeside has filed a reply.[5]

---

[1] The parties have consented to my exercise of jurisdiction. ECF # 12.

[2] ECF # 73.

[3] ECF # 74.

[4] ECF # 75 (Lakeside's response in opposition); ECF # 76 (Krach's response in opposition).

[5] ECF # 77.  As of the due date for a reply (01/11/2010), Krach has not filed a reply.

**Facts**

In settlement of the wrongful death matter originally at issue here, the parties agreed, among other things, that Lakeside would deliver to Krach a cognovit note promising to pay her $48,000 in 120 equal monthly installments, such performance to be secured by: (1) various personal guarantees from defendant Frank Evans and his wife; (2) a mortgage on certain real estate in Michigan; as well as (3) security interests and (4) ownership shares in companies controlled by Evans.[6]

Alternatively, that same agreement provides that in lieu of these various guarantees of performance on the cognovit note listed in § 2, Lakeside, under the terms of § 8, could elect to provide Krach with a surety bond guaranteeing payment of the cognovit note.[7] Section 8 further states that such surety bond "shall be in all respects satisfactory to [Krach]" and moreover provides that if no specified incidents of default on the part of Lakeside occur during the 91 days after Krach "accepts the Surety Bond presented by [Lakeside]," Krach will then "cancel" and "return" the personal guarantees, security agreements, mortgage, and pledged membership units which it had previously received from Lakeside.[8]

There is no dispute here that prior to conveying to Krach any personal guarantees, security agreements, mortgage or membership units as provided for in § 2, Lakeside tendered to Krach a surety bond that, on its face, guarantees only one year of performance on the

---

[6] The settlement agreement is attached to both ECF # 73 (Krach) and ECF # 74 (Lakeside).

[7] *Id.*

[8] *Id.*

ten-year cognovit note provided for in the settlement.[9] On that basis, Krach informed Lakeside that the surety bond was unacceptable and filed the security agreements outlined in the settlement agreement.[10]

Lakeside, in essence, now argues that Krach has no reasonable basis by which to refuse the tendered bond, inasmuch as it claims that the accepted standard in the industry is that surety bonds are written only on yearly terms.[11] It further argues that Krach's filing of security interests when she was in receipt of the tendered bond constitutes a breach of the settlement agreement.[12] It requests that I rule that the tendered bond satisfies the terms of the settlement agreement, order Krach to remove any security interests she filed, and award Lakeside costs and attorneys fees.[13]

Krach, for her part, argues that the settlement agreement required Lakeside to first record the mortgage and security interests, with such instruments to be removed or cancelled 91 days after Krach had accepted a bond, with such acceptance being a subjective matter subject only to the requirement that it be in good faith.[14] Since, as is clear, the bond as written does not guarantee payments on the cognovit note beyond the first year, Krach

---

[9] A copy of the bond itself is attached to ECF # 74.

[10] *See*, attachments to ECF # 68.

[11] ECF # 74 at 3.

[12] *Id*. at 3-4.

[13] *Id*. at 4.

[14] ECF # 73 at 10-11.

-3-

maintains that her refusal to accept the bond as tendered was in good faith and within her rights to reject a bond not satisfactory to her in "all respects."[15] Thus, she contends, I should issue an injunction requiring Lakeside to record the mortgage and provide a title report verifying that no liens have attached to the property since the settlement here, as well as award her costs and attorneys fees.[16]

## Analysis

The issues here are straightforward and should have been quickly resolved by the parties acting in good faith[17] without necessitating my involvement.[18] Nonetheless, having reached this stage, the analytic path to my resolution of this matter is brief.

First, as is plain from the unambiguous language of the agreement, Lakeside was, upon approval of this settlement by the state probate court, immediately to file the mortgage, with such mortgage to be removed or cancelled only after 91 days had elapsed from the time Krach accepted a bond in lieu of the mortgage, if Lakeside chose to tender a bond and if Krach found it satisfactory. Lakeside is without grounds in the agreement to evade its obligation to file the mortgage regardless of whether it might later choose to remove that

---

[15] *Id*. at 11.

[16] *Id*. at 12.

[17] *See*, settlement agreement at § 10 where the parties agreed to "cooperate fully" to carry out their agreement.

[18] Although I do retain authority to enforce the agreement. ECF # 65.

-4-

filing with a bond. That it did not do so is plainly a breach of the agreement and the root of the current dispute.

Second, as is undisputed, the settlement agreement, by its terms, is governed by Ohio law.[19] Under Ohio law, as correctly noted by Krach, where the "satisfaction clause" to a settlement agreement provides, as here, that any bond tendered to Krach be in a form satisfactory to her "in all respects," such a provision is held to utilize a subjective standard, requiring for its enforcement only that Krach be "actually satisfied;" a determination, in turn, subject only to the requirement that she act in good faith in deciding to accept or reject the bond.[20]

Here, it is plain that Krach is not "actually satisfied" with Lakeside's bond that guarantees only the first year of payments on a note payable over ten years. As such, it is equally plain that such dissatisfaction is entirely reasonable and, therefore, made in good faith.

In that regard, I note that Lakeside's argument that surety bonds cannot be obtained for periods longer than one year is entirely beside the point. Even if true, Krach's objection to a one-year guarantee of a ten-year obligation remains reasonable and in good faith. If no bond can be obtained ensuring payments for longer than one year, Krach remains free to in good faith refuse to accept any bond and, under the agreement, Lakeside will simply not be able to exercise the option of substituting a bond for the other guarantees. Rather, as the

---

[19] Settlement agreement at § 9.

[20] *Buckholz v. Bowling Green State Univ.*, 2006 WL 322300, at *4 (Jan. 20, 2006 Ohio Ct. of Claims) (citation omitted).

settlement agreement itself states, absent a bond satisfactory in all respects to Krach, payment of the note is secured by those other guarantees that Lakeside was to have put in place regardless of whether it later chose to tender a bond.

Third, Lakeside's argument that I require Krach to remove the security interests she filed on the grounds that such filings in this case are beyond the scope of the agreement is unpersuasive. As noted, it is Lakeside that is required in the first instance to file those security agreements, subject to them being potentially later removed and cancelled by Krach 91 days after acceptance of a satisfactory bond. Lakeside cannot here be heard to claim any injury from Krach doing that which Lakeside defaulted in doing.[21]

Fourth, although Krach appears to be correct to observe that, under the mortgage, she is entitled to attorneys fees and expenses in any action to enforce any terms of the mortgage,[22] I observe that this is not an action brought under the mortgage but strictly involves enforcing the terms of the parties' settlement agreement in the case before me. Thus, I will not order that Krach recover any attorneys fees or costs incurred here based on the language of the mortgage. Krach is free in any other forum to seek any remedy available under the mortgage.

---

[21] *See*, *Marinaro v. Major Indoor Soccer League,* 81 Ohio App.3d 42, 44, 610 N.E.2d 450, 452 (Ohio App. 9 Dist., 1991)(citations omitted). "The 'clean hands doctrine' of equity requires that whenever a party takes the initiative to set in motion the judicial machinery to obtain some remedy but has violated good faith by his prior-related conduct, the court will deny the remedy."

[22] *See*, ECF # 68, Attachment (mortgage) at 12.

Finally, despite Krach's request that I order Lakeside to file the mortgage along with a title report indicating that no additional liens or encumbrances appear on the title, I find nothing in the parties' settlement agreement concerning such an added requirement. Again, I will enforce the agreement but will not permit the creation of a new case. Should Krach conclude that the condition of the property at the time the mortgage is recorded is materially different from that represented during the drafting of the mortgage, she retains the right to bring such an action in the appropriate forum.

Conclusion

Thus, for the foregoing reasons, Krach's motion is granted to the extent that Lakeside is ordered to immediately comply with § 2(C) of the settlement agreement by filing any and all documents required thereby, specifically including the mortgage described in § 2(C)(iii). Lakeside's motions are denied.

IT IS SO ORDERED.


Dated:   January 12, 2010                          s/ William H. Baughman, Jr.
                                                   United States Magistrate Judge